Cristina Perez Hesano (#027023)
Cperez@perezlawgroup.com
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: 602.730.7100
Fax: 623.235.6173

William B. Federman
OK Bar No. 2853
(admitted *pro hac vice*)
Kennedy M. Brian
(admitted *pro hac vice*)
OK Bar No. 34617
wbf@federmanlaw.com
kpb@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112

***Attorneys for Plaintiff and the***
***Putative Class***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Daniel Davila**, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**New Enchantment Group, LLC,**<br><br>Defendant. | No. 2:23-cv-01098-PHX-SRB<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS .......................................................................... 1

III.   PROCEDURAL HISTORY .......................................................................... 2

IV.    THE SETTLEMENT TERMS ..................................................................... 2

   A.   PROPOSED SETTLEMENT CLASS ............................................................... 2

   B.   CLASS NOTICE AND SETTLEMENT ADMINISTRATION ................................. 3

   C.   ATTORNEYS' FEES AND EXPENSES ........................................................... 4

   D.   SERVICE AWARD ................................................................................... 4

V.     LEGAL AUTHORITY ............................................................................. 5

VI.    ARGUMENT .......................................................................................... 5

   A.   THE SETTLEMENT SATISFIES RULE 23(A) .................................................. 5

     1.   The Proposed Class is Sufficiently Numerous ...................................... 6

     2.   The Settlement Class Satisfies Commonality ........................................ 6

     3.   Plaintiff's Claims are Typical to those of the Class ............................. 6

     4.   Plaintiff Will Adequately Protect the Interests of the Class ................. 7

   B.   THE REQUIREMENTS OF RULE 23(B)(3) ARE MET FOR PURPOSES OF SETTLEMENT. 7

   C.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED PURSUANT TO RULE 23(E). .......................................................................................... 8

     1.   The Strength of Plaintiff's Case ......................................................... 9

     2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..... 10

     3.   The Risk of Maintaining Class Action Status Through Trial ............... 11

     4.   The Amount Offered in Settlement ..................................................... 12

     5.   The Extent of Discovery Completed and the Stage of Proceedings .................. 13

     6.   The Experience and Views of Counsel ............................................... 13

     7.   Governmental Participants .............................................................. 14

8.    The Reaction of the Class Members to the Proposed Settlement ....................... 14

9.    Lack of Collusion Among the Parties ................................................................. 14

10.    The Settlement Treats Settlement Class Members Equitably ......................... 14

VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM .. 15

A.    APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR ........................................... 17

B.    APPOINTMENT OF SETTLEMENT CLASS COUNSEL .................................................. 17

VIII.    CONCLUSION ..................................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF AUTHORITIES

**CASES**

*Adlouni v. UCLA Health Systems Auxiliary, et al.*,

No. BC 589243 (Cal. Super. Ct. June 28, 2019) ........................................................ 12

*Amchem Prod., Inc. v. Windsor*,

521 U.S. 591 (1997)....................................................................................................... 5, 7

*Bykov v. DC Trans. Services, Inc.*,

No. 2:18-cv-1692, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) .................................. 9

*Calderon v. Wolf Firm*,

No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018)......... 12

*Chester v. TJX Cos.*,

No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017)........... 10

*Class Plaintiffs v. City of Seattle*,

955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 5

*Cochran v. Accellion, Inc., et al.*,

No. 5:21-cv-01887 (N.D. Cal.) (June 30, 2021)........................................................... 12

*Dennis v. Kellogg Co.*,

No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013).................... 10

*Dickey's Barbeque Restaurants, Inc.*,

Case No. 20-cv-3424 (N.D. Tex.)................................................................................. 12

*Eisen v. Carlisle & Jacquelin*,

417 U.S. 156 (1974)....................................................................................................... 15

*Ellis v. Costco Wholesale Corp.*,

657 F.3d 970 (9th Cir. 2011) ...................................................................................... 6, 7

*Fehlen v. Accellion, Inc.*,

No. 21-cv-01353 (N.D. Cal.) ....................................................................................... 12

*Franklin v. Kaypro Corp.*,

    884 F.2d 1222 (9th Cir. 1989) ..................................................................... 9

*Grimm v. American Eagle Airlines, Inc.*,

    No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014).. 11

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010)

    .............................................................................................................. 10

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ................................................................ 7, 9

*Hartranft v. TVI, Inc.*,

    No. 15-01081-CJC-DFM, 2019 WL 1746137 (C.D. Cal. Apr. 18, 2019) .................... 16

*Holly v. Alta Newport Hospital*,

    No.2:19-cv-07496, 2020 WL 1853308 (April 10, 2020) ................................... 6

*Hudson v. Libre Technology Inc.*,

    No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020).............. 14

*In re Anthem, Inc. Data Breach Litig.*,

    No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018).............................................. 12

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) ..................................................................... 9

*In re Brinker Data Incident Litig.*,

    No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ............. 11

*In re Hyundai & Kia Fuel Econ. Litig.*,

    926 F.3d 539 (9th Cir. 2019) ................................................................... 15

*In re LinkedIn User Priv. Litig.*,

    309 F.R.D. 573 (N.D. Cal. 2015)................................................................ 12

*In re Target Corp. Customer Data Sec. Breach Litig.*,

    MDL No. 14-2522, 2017 WL 2178306(D. Minn. May 17, 2017) ......................... 12

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,

    No. 1:14-MD02583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................ 12

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).................. 6

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

    266 F. Supp. 3d 1 (D.D.C. 2017)................................................................................ 10

*In re: Capital One Consumer Data Breach Litigation*,

    MDL No. 1:19md2915 (AJT/JFA) .............................................................................. 12

*Just Film, Inc. v. Buono*,

    847 F.3d 1108 (9th Cir. 2017) ...................................................................................... 7

*Linney v. Cellular  Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998). ................................................................................... 13

*Malta v. Fed. Home Loan Mortg. Corp.*,

    No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ...................... 8

*Meyer v Portfolio Recovery Associates*,

    707 F.3d 943 (9th Cir. 2012) ....................................................................................... 7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004)................................................................................ 14

*Norton v. Maximus, Inc.*,

    No. CV 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ..................... 14

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,

    303 F.R.D. 337 (E.D. Cal. 2014). .............................................................................. 14

*Orantes-Hernandez v. Smith*,

    541 F. Supp. 351 (C.D. Cal. 1982) .............................................................................. 6

*Paz v. AG Adriano Goldschmeid, Inc.*,

    No. 14-CV-1372, 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016)................................. 11

*Perez, et al. v. Carvin Wilson Software, LLC*,

    No. CV-23-00792 (D. Ariz.)…………………………………..…………………………5

*Phillips Petroleum Co. v. Shutts*,

  472 U.S. 797 (1985) .................................................................................................. 15

*Reyes v. Experian Info. Sols., Inc.*,

  No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020). ................ 8

*Smith v. Triad of Ala.*, LLC,

  No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) . 11

*Spencer v. #1 A LifeSafer of Ariz., LLC*,

  No. CV-18-02225-PHX-BSB, 2019 WL 1034451 (D. Ariz. Mar. 4, 2019) ................ 17

*Tyson Foods, Inc. v. Bouaphakeo*,

  136 S. Ct. 1036 (2016) ................................................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes*,

  564 U.S. 338 (2011) ..................................................................................................... 6

*Wolin v. Jaguar Land Rover N. Am., LLC*,

  617 F.3d 1168 (9th Cir. 2010) ..................................................................................... 8

**RULES**

Federal Rule Civil Procedure 23 ................................................................................ passim

**TREATISES**

4 Newberg on Class Actions § 11.41 (4th ed. 2002) .......................................................... 5

Manual for Complex Litigation (Fourth) (2004) § 21.63 ................................................. 5,6

## I.     INTRODUCTION

Plaintiff Daniel Davila ("Plaintiff") individually and on behalf of the putative class, moves pursuant to Federal Rule of Civil Procedure 23(e) for an Order: (i) granting preliminary approval of the proposed class action settlement; (ii) preliminarily certifying a class for purposes of settlement; (iii) appointing Plaintiff as a Class Representative; (iv) appointing William B. Federman and Kennedy M. Brian of Federman & Sherwood as Settlement Class Counsel; (v) approving the Parties' proposed form and method of giving notice of the pendency of this Action and the Settlement to the Settlement Class; (vi) directing that notice be given to the Settlement Class; (vii) scheduling a final hearing at which time the Court will consider the request for final approval of the Settlement and request for Attorneys' Fees, Expenses, and Service Award to Plaintiff; and (viii) granting such other relief and further relief as the Court deems just and proper.[1] Defendant New Enchantment Group, LLC ("NEG" or "Defendant") does not oppose Plaintiff's Motion. For the reasons set forth herein, the Settlement is fair, reasonable, and adequate, and the Court should grant preliminary approval of the Settlement.

## II.     STATEMENT OF FACTS

This litigation arises from a data security incident that took place on Defendant's systems between October 3, 2022, through October 4, 2022 ("Data Breach" or "Breach") through which an unauthorized actor gained access to certain files containing Plaintiff's and Class Members' personal information that included, depending on each individual, their names in combination with Social Security Numbers, driver's license numbers, financial account numbers or credit/debit card numbers, and/or health insurance information (collectively, "Private Information"). (Compl., ¶¶ 2, 23, 42). Plaintiff alleges that because of the Data Breach cybercriminals accessed and acquired Plaintiff's and Settlement Class Members' Private Information from NEG's network. (*Id.* ¶ 2). Upon

---

[1] The Class Action Settlement Agreement is attached hereto as **Exhibit A**. Unless otherwise noted capitalized terms have the same meaning assigned to them in the Settlement Agreement ("SA").

discovering the Data Breach, Defendant provided notice of the Breach to affected individuals on February 28, 2023, and June 6, 2023. (SA, p. 1).

## III. PROCEDURAL HISTORY

After receiving notice of the Data Breach, Plaintiff filed a class action lawsuit against NEG based on its alleged disclosure of his Private Information. (*See generally*, Compl.). The Complaint alleges the following causes of action: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; and (iv) violations of the Arizona Consumer Fraud Act. (*Id.*). In response to the Complaint, NEG filed a Motion to Dismiss (ECF No. 10), which was denied on April 25, 2024. (ECF No. 23). Thereafter, the Parties submitted a Case Management Report (ECF No. 26), attended a scheduling conference with the Court, and exchanged initial disclosures. Plaintiff issued requests for production of documents, requests for admission, and interrogatories to NEG on July 19, 2024.

On August 15, 2024, after an informal exchange of discovery requests, information, and production of documents by NEG to Plaintiff's counsel, the Parties participated in a full-day mediation before experienced mediator, Hon. Judge David E. Jones (Ret.). The Parties were able to reach a settlement, which is memorialized in the Settlement Agreement and attached exhibits (collectively, the "Settlement" or "Settlement Agreement") (attached hereto as **Exhibit A**). The Parties worked together to finalize the Settlement Agreement and exhibits thereto in the weeks following the mediation.

## IV. THE SETTLEMENT TERMS

### A. Proposed Settlement Class

The Settlement Class is defined as: the 5,568 individuals identified by Defendant as having personally identifiable information compromised by the Data Breach and to whom Defendant provided written or substitute notice of the Data Breach on either February 28, 2023, or June 6, 2023. (SA, ¶ 35). The Settlement Class will not include Defendant or its parents, subsidiaries, divisions, or affiliates, or their respective successors or predecessors, or any entity in which Defendant or its parents has a

controlling interest, or any of their current or former officers and directors; any judge providing over the Lawsuit and members of their families; persons who properly execute and file a timely request for exclusion from the Settlement Class; persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; Plaintiff's counsel, Class Counsel, and Defendant's Counsel; and the legal representatives, successors, and assigns of any such excluded persons. (*Id.*).

The Settlement provides a favorable result for the Settlement Class in the form of (1) Credit Monitoring Services; and either (2) reimbursement for Attested Time, Out-of-Pocket Costs, and/or Financial Losses; or (3) an Alternative Cash Payment. (*Id.* ¶ 41). Unless a Settlement Class Member elects to receive an Alternative Cash Payment, Defendant will provide compensation to Settlement Class Members for Attested Time of up to five (5) hours at a rate of $30.00 per hour (a maximum amount of $150.00) for time spent remedying issues related to the Data Breach (*Id.* ¶ 42),  Out-of-Pocket Costs up to $500.00 (*Id.* ¶ 43), and Financial Losses up to $4,000.00 (*Id.* ¶ 44). Alternatively, in lieu of a Settlement Class Member electing to receive compensation for Attested Time, Out-of-Pocket Costs, or Financial Losses, Settlement Class Members may elect to receive an Alternative Cash Payment of $75.00. (*Id.* ¶ 45). Regardless of the payment option selected, all Settlement Class Members are eligible to receive two (2) years of Credit Monitoring Services that provide monitoring with the three (3) major credit bureaus (Experian, Equifax, and Transunion), alerts about changes in information to the credit report, dark web scanning for personal information, identify theft insurance, and access to assistance to help investigate and resolve any issues. (*Id.* ¶¶ 11, 46). There is no aggregate monetary cap on the payout of the claims made by Settlement Class Members.

## B. Class Notice and Settlement Administration

Notice will be paid for by Defendant separate and apart from the benefits made available to Settlement Class Members. (*Id.* ¶¶ 22, 55). Notice will be given to the Settlement Class via individual direct notice, which will be given by mailing the Postcard Notice notices to the Settlement Class Members. (*Id.* ¶ 55(a)).  Defendant will also publish

notice of the settlement on its website for a period of sixty (60) days. (*Id*. ¶ 55(b)). A Long Form Notice will also be posted on the Settlement Website, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorney's fees and expenses. (*Id*. ¶ 55(c)). The Claims Period will last sixty (60) days from the date of Notice. (*Id*. ¶ 55). If the claims rate is below two percent (2.0%) thirty (30) days before the Claims Deadline, Class Counsel will have the option to direct the Settlement Administrator to issue a single-sided postcard reminder notice to the Settlement Class Members. (*Id*.). The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim, opt-out, or object to the Settlement. (*Id*. at Exs. 1–4).

**C. Attorneys' Fees and Expenses**

The Parties agreed that, as part of the Settlement, proposed Settlement Class Counsel will seek an award of reasonable attorneys' fees and reimbursement of litigation expenses to be paid by Defendant. (*Id*. ¶ 74). As explained in the Notices, the attorneys' fees, costs, and expenses to be requested by proposed Class Counsel will not exceed $282,500, the payment of which will not impact the benefits made available to the Settlement Class. (*Id*.). Notably, the discussion of attorneys' fees and costs did not take place until after the Parties agreed to all material settlement terms. (*See* Declaration in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl."), ¶¶ 5, 14 (attached hereto as **Exhibit B**)). Class Counsel respectfully submit that this fee request is within the range of reasonableness for settlements of this nature and size. (*Id*. ¶ 14.). Plaintiff and Class Counsel will submit a fulsome motion supporting the fee request prior to the Final Approval Hearing.

**D. Service Award**

In recognition of Plaintiff's time and effort expended in pursuing the litigation and in fulfilling his obligations and responsibilities as a representative of the Class, proposed Class Counsel will ask the Court to approve a Service Award of $1,500.00 for Plaintiff. (SA, ¶ 72). The amount requested is presumptively reasonable and is directly in line with

the amount this Court awarded in a similar data privacy case. *Perez, et. al. v. Carvin Wilson Software, LLC*, No. CV-23-00792, ECF No. 53 (D. Ariz.) (approving service awards of $1,500.00).

## V.    LEGAL AUTHORITY

Plaintiff brings this Motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, followed by (2) dissemination of court-approved notice to the class, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63.

Plaintiff requests the Court take the first step and grant preliminary approval of the proposed Settlement Agreement.

## VI.    ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Id.* § 21.632.

### A.  The Settlement Satisfies Rule 23(a)

Before assessing the Parties' Settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth), §

21.632. The requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

### 1. The Proposed Class is Sufficiently Numerous

While there is no fixed point where the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital*, No.2:19-cv-07496, 2020 WL 1853308, at *7 (April 10, 2020). The proposed Settlement encompasses 5,568 individuals. (SA, ¶ 35). The proposed Settlement class easily satisfies Rule 23's numerosity requirement. Joinder of the individuals is impracticable, therefore, the numerosity prong is satisfied.

### 2. The Settlement Class Satisfies Commonality

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, whether Class Members' Private Information was compromised in the Data Breach; whether NEG owed a duty to Plaintiff and Class Members to protect their Private Information; whether NEG breached its duties; and whether NEG violated the common law and statutory violations alleged. Thus, the commonality requirement is met.

### 3. Plaintiff's Claims are Typical to those of the Class

Plaintiff satisfies the typicality requirement of Rule 23 because his claims, which are based on Defendant's alleged failure to protect the Private Information of Plaintiff

and all Class Members, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiff alleges his Private Information was compromised, and that he was therefore impacted by the same inadequate data security that harmed the rest of the Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Thus, typicality is met here.

### 4.  Plaintiff Will Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between the named plaintiff and their counsel and the absent class members; and (2) the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiff is a member of the Class who allegedly experienced the same injuries and seeks, like other Class Members, compensation for NEG's alleged data security shortcomings. Plaintiff has no conflicts of interest with other Class Members, is subject to no unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Class.

Further, counsel for Plaintiff have years of experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. (*See* Counsel Decl. ¶ 15). Thus, Plaintiff satisfies the requirement of adequacy.

### B.  The Requirements of Rule 23(b)(3) are Met for Purposes of Settlement.

Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution. *Id.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As

discussed above, common questions predominate over any questions affecting only individual members. Plaintiff's claims depend on whether NEG used reasonable data security to protect his and the Class's Private Information. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

Further, class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (predominance met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed").

Accordingly, certification of the Class for purposes of settlement is appropriate.

### C.  The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). If the

parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).

"In evaluating a proposed settlement at the preliminary approval stage, . . . the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1692, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). The Ninth Circuit has identified nine (9) factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the principle that settlements of class actions are highly favored by federal courts. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Here, the relevant factors support the conclusion that the Settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiff's Case

Plaintiff believes his claims are viable and that he has a reasonably good chance of proving that NEG's data security was inadequate and that, if he establishes that central fact, Defendant is likely to be found liable under at least some of the liability theories and

statutory and common law claims Plaintiff pled in his Complaint. However, while Plaintiff believes he has strong claims and would be able to prevail, he also recognizes that success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiff faced with respect to the novel claims brought in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiff believes his case is strong, all cases, including this one, are subject to substantial risk. This case involves a proposed class of over 5,000 individuals (each of whom, NEG would argue, needs to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that has already provided at least some relief to the potentially affected individuals in the form of free credit monitoring.

Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data similar to the data at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019)

(holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation over time, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiff's view, remain largely untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal, which would result in no recovery for the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 3.  The Risk of Maintaining Class Action Status Through Trial

Plaintiff acknowledges that if he were to proceed to litigate his claims through trial, he and the Class would encounter risks in obtaining and maintaining certification of the Class. The Class has not been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK, 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45–46 (M.D. Ala. Mar. 17, 2017), and recently in *In re Brinker Data Incident Litig*., No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. Thus, the dearth of direct precedent adds to the risks posed by continued litigation and this factor favors approval.

### 4.  The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data breach litigation generally and this litigation specifically, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of Credit Monitoring Services, Out-of-Pocket Costs, Financial Losses, Attested Time, and Alternative Cash Payments. (SA, ¶¶ 41–46). This is a strong result for the Class and is on par with or exceeds that of other data breach settlements.[2] These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiff has achieved an excellent resolution for the Settlement Class.

Because the Settlement here is similar to, or exceeds, other settlements reached and approved in similar cases, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS, 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the

---

[2] *See, e.g., Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (settlement of $8.1 million for 9.2 million class members who had their Social Security Numbers compromised; $0.90 per class member); *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), ECF No. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Cochran v. Accellion, Inc., et al.*, No. 5:21-cv-01887 (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per member); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 class members; 44 cents per member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 class members; $1.45 per member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at **1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million class members; 10 cents per member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per member).

difficulties and expenses Class Members would face pursuing individual claims, as well as the risk that some Class Members may be unaware of their claims, this settlement is appropriate. *See id*. Accordingly, this factor favors approval.

### 5.  The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiff's Counsel vigorously and aggressively gathered information regarding the Data Breach—including publicly-available documents concerning announcements of the Data Breach as well as obtaining an expert to search the dark web. (Counsel Decl. ¶ 6). The Parties also informally exchanged non-public information concerning the Data Incident, its scope, and remedial measures being undertaken by NEG. (*Id*.). In preparation for mediation, Class Counsel reviewed all documents produced by Defendant, as well as its responses to Plaintiff's requests for information. (*Id*.). Here, the litigation proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including a realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

### 6.  The Experience and Views of Counsel

Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. (*See* Counsel Decl., ¶ 16, Ex. 1 (resumé of Federman & Sherwood)). Class Counsel's experience in similar types of privacy and data protection cases provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests. Having worked on behalf of the putative Class since the Data Breach was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement achieved. (*Id*. ¶¶ 16, 19). A great deal of weight is to be accorded to the recommendation of experienced counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.,*

*Norton v. Maximus, Inc.*, No. CV 1:14-0030 WBS, 2017 WL 1424636, at \*6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7. Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given to the Class, this factor is not yet implicated.

### 9. Lack of Collusion Among the Parties

Through the assistance of a neutral mediator and a full-day mediation, the Parties negotiated a substantial, multifaceted Settlement, as described above. (Counsel Decl. ¶¶ 4–5). Class Counsel and NEG's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator here is also evidence of a lack of collusion. *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014). Therefore, the Court can be assured that the negotiations were not collusive.

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all Class Members as equitably as possible under the circumstances. In considering whether this factor weighs in favor of approval, the Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, \*9 (S.D. Cal. May 13, 2020) (citations omitted).

Here, the Settlement treats all Class Members equitably. Each Class Member has the opportunity to make the same claims for benefits under the Settlement. While Plaintiff will seek approval of a Service Award from this Court, as will be further explained in Plaintiff's eventual motion for attorneys' fees and service award, the contemplated award is in line with those granted in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of the Settlement. As such, this

factor also weighs in favor of approval.

**VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM**

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

Here, and following a competitive bidding process, the Parties agreed to a robust notice program to be administered by a well-respected third-party class administrator—A.B. Data—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via direct U.S. mail. (SA, ¶ 55(a)). The Claims Period will last for 60 days from the date of Notice. (*Id.* ¶ 55).  If the claims rate is below 2.0% 30 days before the Claims Deadline, Class Counsel will have the option to direct the Settlement Administrator to issue a single-sided postcard reminder notice to the Settlement Class Members. (*Id.*).

The costs of administering the Settlement will be paid by NEG. (*Id.*). The Notices and Claim Form negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. (*Id.* at Exs. 1–4).

In addition to the direct notice, Defendant will publish the Website Notice on its website and continuously maintain it there for a period of 60 days from the date of Notice as a form of alternate notice to the Settlement Class Members and substitute notice to those Settlement Class Members for whom Defendant and the Settlement Administrator are unable to locate mailing addresses for sending the Postcard Notice. (*Id.* ¶ 55(b)). The Settlement Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Postcard Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement. (*Id.* ¶ 55(c)).

Plaintiff negotiated a notice program that is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Class Members may object to the Settlement or exclude themselves from the Settlement within 45 days of the Notice Deadline. (*Id.* ¶¶ 56–57).

Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL

1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights.").

### A. Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request that the Court appoint A.B. Data to serve as the Settlement Administrator. A.B. Data has a trusted and proven track record of supporting thousands of class action administrations. (Counsel Decl. ¶ 9).

### B. Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. (*See* Counsel Decl. ¶ 16; Ex. 1). Accordingly, the Court should appoint William B. Federman and Kennedy M. Brian of Federman & Sherwood as Class Counsel.

### VIII.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court grant Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the Proposed Order attached hereto as **Exhibit C**.

Date: October 10, 2024                    Respectfully Submitted,

*/s/: William B. Federman*
William B. Federman*
Kennedy M. Brian
**FEDERMAN & SHERWOOD**

10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com

*Admitted pro hac vice*

***Proposed Settlement Class Counsel for Plaintiff and the Class***

## CERTIFICATE OF SERIVCE

I hereby certify that on October 10, 2024, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/: William B. Federman*