Cristina Perez Hesano (#027023)
Cperez@perezlawgroup.com
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: 602.730.7100
Fax: 623.235.6173

William B. Federman
OK Bar No. 2853
(admitted *pro hac vice*)
Kennedy M. Brian
(admitted *pro hac vice*)
OK Bar No. 34617
wbf@federmanlaw.com
kpb@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112

***Attorneys for Plaintiff and the
Putative Class***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Daniel Davila**, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**New Enchantment Group, LLC,**<br><br>Defendant. | No. 2:23-cv-01098-PHX-SRB<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |

1

2

# **TABLE OF CONTENTS**

3  I.   INTRODUCTION ...................................................................................... 1

4  II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT ............................ 3

5  III. LEGAL AUTHORITY ................................................................................ 4

6  IV.  ARGUMENT ............................................................................................ 5

7     A.  THE SETTLEMENT SATISFIES RULE 23(A)................................................ 5

8        1.   The Proposed Class is Sufficiently Numerous ...................................... 5

9        2.   The Settlement Class Satisfies Commonality........................................ 6

10       3.   Plaintiff's Claims are Typical to those of the Class ............................... 6

11       4.   Plaintiff Will Adequately Protect the Interests of the Class.................... 6

12    B.  THE REQUIREMENTS OF RULE 23(B)(3) ARE MET FOR PURPOSES OF SETTLEMENT. 7

13    C.  THE SETTLEMENT SHOULD BE APPROVED PURSUANT TO THE RULE 23(E) FACTORS

14    AND THE NINTH CIRCUIT'S ADDITIONAL FACTORS. ....................................... 8

15       1.   The Strength of Plaintiff's Case. ......................................................... 8

16       2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation....... 9

17       3.   The Risk of Maintaining Class Action Status Through Trial.................... 10

18       4.   The Amount Offered in Settlement ..................................................... 11

19       5.   The Extent of Discovery Completed and the Stage of Proceedings.................. 12

20       6.   The Experience and Views of Counsel................................................. 13

21       7.   Governmental Participants. ............................................................... 13

22       8.   The Reaction of the Class Members to the Proposed Settlement...................... 14

23       9.   Lack of Collusion Among the Parties.................................................. 15

24       10.    The Settlement Treats Settlement Class Members Equitably........................ 15

25 V.   THE NOTICE PROGRAM COMPORTED WITH DUE PROCESS...................... 16

26 VI.  CONCLUSION ...................................................................................... 17

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

**CASES**

3

*Adkins v. Facebook, Inc.*,

4

424 F.Supp.3d 686 (N.D. Cal. 2019) ........................................................................ 11

5

*Amchem Prod., Inc. v. Windsor*,

6

521 U.S. 591 (1997) ................................................................................................ 5, 7

7

*Bowdle v. King's Seafood Co., LLC*,

8

No. SACV2101784CJCJDEX, 2022 WL 19235264 (C.D. Cal. Oct. 19, 2022) ........... 12

9

*Bozek v. Arizona Lab. Force Inc.*,

10

No. CV-24-00210-PHX-SMB, 2025 WL 264174 (D. Ariz. Jan. 22, 2025) .................... 9

11

*Calderon v. Wolf Firm*,

12

No. SACV 16-1622-JLS, 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ..................... 12

13

*Carter v. Vivendi Ticketing US LLC*,

14

No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ........... 14

15

*Cheryl Gaston v. FabFitFun, Inc.*,

16

No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........... 11, 12

17

*Chester v. TJX Cos.*,

18

No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ............. 9

19

*Class Plaintiffs v. City of Seattle*,

20

955 F.2d 1268 (9th Cir. 1992) .................................................................................. 13

21

*Dennis v. Kellogg Co.*,

22

No. 09-cv-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................................... 9

23

*Ellis v. Costco Wholesale Corp.*,

24

657 F.3d 970 (9th Cir. 2011). .................................................................................. 5, 7

25

*Espinosa v. United Student Aid Funds, Inc.*,

26

553 F.3d 1193 (9th Cir. 2008) .................................................................................. 17

27

*Farrar v. Workhorse Grp., Inc.*,

28

No. CV2102072CJCPVCX, 2023 WL 5505981 (C.D. Cal. July 24, 2023) ................ 10

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 7

*Harbour v. California Health & Wellness Plan*,

   No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ...................... 10

*Hashemi v. Bosley, Inc.*,

   2022 WL 18278431 (C.D. Cal. Nov. 21, 2022). ......................................................... 10

*Horton v. USAA Cas. Ins. Co.*,

   266 F.R.D. 360 (D. Ariz. 2009) .................................................................................... 7

*Howard v. Web.com Grp. Inc.*,

   No. CV-19-00513-PHX-DJH, 2021 WL 2637497 (D. Ariz. Mar. 16, 2021) ................ 5

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,

   No. 24-MD-03098-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ...................... 8

*In re Apollo Grp. Inc. Sec. Litig.*,

   No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .................. 14

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) ...................... 11

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) ...................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,

   654 F.3d 935 (9th Cir. 2011) ........................................................................................ 5

*In re Forefront Data Breach Litig.*,

   No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ................................. 15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

   293 F.R.D. 21 (D. Me. 2013) ...................................................................................... 11

*In re LifeLock, Inc. Mktg. & Sales Pracs. Litig.*,

   No. MDL 08-1977-MHM, 2010 WL 11627648 (D. Ariz. Aug. 31, 2010) ................. 15

*In re Portal Software, Inc. Sec. Litig.*,

   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,

 No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017)................................... 15

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,

 No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)................... 6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,

 720 F. Supp. 1379 (D. Ariz. 1989) ............................................................... 13

*Johnson v. Yuma Reg'l Med. Ctr.*,

 No. CV-22-01061-PHX-SMB, 2024 WL 4803881 (D. Ariz. Nov. 15, 2024) ............... 9

*Just Film, Inc. v. Buono*,

 847 F.3d 1108 (9th Cir. 2017) ....................................................................... 6

*Koenig v. Lime Crime, Inc.*,

 No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018)............. 12

*Linney v. Cellular  Alaska P'ship*,

 151 F.3d 1234 (9th Cir. 1998) ............................................................... 12, 13

*Malta v. Fed. Home Loan Mortg. Corp.*,

 No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ...................... 8

*Mullane v. Central Hanover Bank & Trust Co.*,

 339 U.S. 306 (1950)........................................................................................ 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

 221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 14

*Pygin v. Bombas, LLC*, No. 20-CV-04412-JSW,

 2021 WL 6496777 (N.D. Cal. Nov. 29, 2021) ............................................... 12

*Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS,

 2018 WL 11352039 (D. Ariz. July 27, 2018)................................................. 13

*Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS,

 2018 WL 11352039(D. Ariz. July 27, 2018).................................................... 9

*Saliba v. KS Statebank Corp.*,

 No. CV-20-00503-PHX-JAT, 2021 WL 4775105 (D. Ariz. Oct. 13, 2021).................. 6

v

*Schneider v. Chipotle Mexican Grill, Inc.*,

  336 F.R.D. 588 (N.D. Cal. 2020) .................................................................. 14

*Smith v. Kaye-Smith Enterprises, Inc.*,

  No. 3:22-CV-1499-AR, 2025 WL 72138 (D. Or. Jan. 10, 2025) .................................... 9

*Tyson Foods, Inc. v. Bouaphakeo*,

  136 S. Ct. 1036 (2016) ............................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,

  564 U.S. 338 (2011) .............................................................................. 6

*Weisenberger v. Ameritas Mut. Holding Co.*,

  No. 4:21-CV-3156, 2024 WL 3903550 (D. Neb. Aug. 21, 2024) ................................. 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,

  617 F.3d 1168 (9th Cir. 2010) .................................................................... 8

*Wood v. Ionatron, Inc.*,

  No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009) ................. 14

*Zwicky v. Diamond Resorts Inc.*,

  No. CV-20-02322-PHX-DJH, 2024 WL 1717553 (D. Ariz. Apr. 22, 2024) ................ 5

**RULES**

Fed. R. Civ. P. 23 ....................................................................... passim

1

## I.    INTRODUCTION

2

Plaintiff Daniel Davila ("Plaintiff") individually and on behalf of the putative

3
class, moves pursuant to Federal Rule of Civil Procedure 23 for an order granting final

4
approval of the class action settlement ("Settlement") preliminarily approved by this

5
Court on October 29, 2024 (ECF No. 33), between Plaintiff and Defendant New

6
Enchantment Group, LLC ("NEG" or "Defendant").[1] NEG does not oppose the relief

7
sought in this Motion.

8
As explained below, the Court should grant final approval to the Settlement as a

9
fair, reasonable, and adequate compromise in lieu of the costly, risky, and lengthy

10
prospect of continued litigation. The Settlement provides substantial and immediate

11
benefits that are specifically designed to combat the harm Plaintiff alleges in this action.

12
If final approval is granted, the Settlement will successfully resolve the claims of

13
approximately 5,568 individuals who were potentially impacted by the Data Breach.

14
The Settlement provides a robust benefits package to Settlement Class Members.

15
Through the Settlement, all Settlement Class Members have the opportunity to submit a

16
claim for: (1) Credit Monitoring Services; and either (2) reimbursement for Attested

17
Time, Out-of-Pocket Costs, and/or Financial Losses; or (3) an Alternative Cash Payment.

18
(SA, ¶ 41).[2] Specifically, unless a Settlement Class Member elects to receive an

19
Alternative Cash Payment, Defendant will provide compensation to Settlement Class

20
Members for Attested Time of up to five (5) hours at a rate of $30.00 per hour (a

21
maximum amount of $150.00) for time spent remedying issues related to the Data Breach

22
(*id.* ¶ 42), Out-of-Pocket Costs up to $500.00 (*id.* ¶ 43), and Financial Losses up to

23
$4,000.00 (*id.* ¶ 44). Alternatively, in lieu of compensation for Attested Time, Out-of-

24
Pocket Costs, or Financial Losses, Settlement Class Members may elect to receive an

25
Alternative Cash Payment of $75.00. (*Id.* ¶ 45). Regardless of the payment option

26

_____

[1] A proposed order is submitted herewith as **Exhibit 1.**

27
[2] The Settlement Agreement ("SA") is attached to Plaintiff's Unopposed Motion for

28
Preliminary Approval of Class Action Settlement and Memorandum of Law in Support as
Exhibit A. (ECF No. 32-1).

selected, all Settlement Class Members are eligible to receive two (2) years of Credit Monitoring Services that provide monitoring with the three (3) major credit bureaus (Experian, Equifax, and Transunion), alerts about changes in information to the credit report, dark web scanning for personal information, identify theft insurance, and access to assistance to help investigate and resolve any issues. (*Id.* ¶¶ 11, 46). Most importantly, there is no aggregate monetary cap on the payout of the claims made by Settlement Class Members. All valid, timely, and Approved Claims will be paid. This is an exceptional result that provides significant relief to the Settlement Class.

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—only after an extensive investigation, overcoming a motion to dismiss in its entirety, hard-fought litigation, and arm's-length negotiations. Although Plaintiff and Settlement Class Counsel[3] believe in the merits of the claims asserted, Defendant denies all charges of wrongdoing or liability. Plaintiff's claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiff would face serious risks at each stage of litigation. Against these risks, Class Counsel secured a very favorable Settlement for the Class.

After this Court granted preliminary approval, the Settlement Administrator (A.B. Data, Ltd.)—with the help of the Parties—disseminated Notice to the Settlement Class as set forth in the Settlement Agreement. For the Settlement Class Members for whom NEG had valid mailing addresses,[4] a Postcard Notice, providing important details about the Settlement, was provided directly to Settlement Class Members via first-class mail. (*See* Declaration of Kayla Kopetsky in Support of Final Approval of Class Action Settlement ("Notice Decl."), ¶ 7, attached hereto as **Exhibit 2**). The Postcard Notice reached

---

[3] "Settlement Class Counsel" or "Class Counsel" refers to William B. Federman and Kennedy M. Brian of Federman & Sherwood.

[4] The Settlement Class is comprised of approximately 5,568 individuals. (SA, ¶ 35). NEG had valid mailing addresses for 4,901 unique Settlement Class Members and did not have mailing addresses for an additional 755 unique Settlement Class Members. (Notice Decl., ¶ 5).

approximately 98.6% of the Settlement Class Members who were sent the Postcard Notice. (*Id.* ¶ 9). To account for the small number of individuals for whom NEG did not have mailing addresses, NEG posted notice of the Settlement on its website for 60 days, in accordance with the Settlement Agreement. (SA, ¶ 55(b)). Although not required by the Settlement Agreement, Federman & Sherwood also posted a press release on the firm's website, providing a link to the Settlement Website.[5] On January 24, 2025, a Reminder Postcard Notice was mailed to the Settlement Class Members who had not yet submitted a claim and for which Defendant had a valid mailing address. (Notice Decl., ¶ 10). The Postcard Notice, Claim Form, Long Form Notice, and Settlement Website[6] were written in plain language, providing each Settlement Class Member with information on how to make a claim, how to opt-out, and how object to the Settlement. (*Id.* at Exhibits B–C). Out of approximately 5,568 Settlement Class Members, absolutely ***no*** Settlement Class Members have sought to be excluded from the Settlement, and ***no*** Settlement Class Members have objected to any aspect of the Settlement. (*Id.* ¶¶ 21–22). In sum, the Settlement Class received adequate notice of the Settlement, and the terms of the Settlement were well received by the Class.

For the reasons set forth herein, the Settlement is fair, reasonable, and adequate, and the Court should grant final approval of the Settlement.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

In the interest of efficiency, for the complete factual and procedural background underpinning this case and an in-depth description of the Settlement terms, Plaintiff refers the Court to and hereby incorporate by reference Plaintiff's Unopposed Motion for Preliminary Approval  of Class Action Settlement and Memorandum of Law in Support (ECF No. 32) and Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Service Award and Memorandum of Law in Support (ECF No. 34).

---

[5] https://www.federmanlaw.com/blog/federman-sherwood-announces-preliminary-approval-of-settlement-in-new-enchantment-group-class-action/.
[6] https://newenchantmentsettlement.com/home/.

### III.    LEGAL AUTHORITY

Plaintiff brings this Motion pursuant to Federal Rule Civil Procedure ("Rule") 23(e), under which Court approval is required to finalize a class action settlement. In determining whether to finally approve a class action settlement, the Court must evaluate the Settlement under Rule 23(a–b) and Rule 23(e)(2).

Under the standards of Rule 23(a) and (b) the Court must determine that the Settlement Class, as defined by the Settlement Agreement, is certifiable. This Court considered and granted preliminary approval of class certification in its Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 33). For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 32), this Court should certify the class for purposes of final approval of the settlement.

Next, the Settlement must be approved under Rule 23(e)(2). In doing so, the Court must determine, after holding a final hearing, that it is fair, adequate, and reasonable. When making this determination, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the Rule 23(e)(2) factors, courts in the Ninth Circuit look to nine (9) factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

## IV.    ARGUMENT

### A.  The Settlement Satisfies Rule 23(a).

As noted above, before assessing the Parties' Settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Rule 23(a) requirements are commonly known as: numerosity, commonality, typicality, and adequacy—each of which are met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

The Court previously preliminarily certified the Settlement Class for Settlement purposes only. (ECF No. 33).  Nothing has changed to affect the propriety of certification of the Settlement Class; thus, the Settlement Class should receive final certification. *See Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 2024 WL 1717553, at *4 (D. Ariz. Apr. 22, 2024) (incorporating the court's analysis from the preliminary approval order into the final approval order where "no facts that would affect these requirements ha[d] changed"); *Howard v. Web.com Grp. Inc.*, No. CV-19-00513-PHX-DJH, 2021 WL 2637497, at *1 (D. Ariz. Mar. 16, 2021) (same); *Arrison v. Walmart Inc.*, No. CV-21-00481-PHX-SMB, 2024 WL 3413968, at *1 (D. Ariz. July 15, 2024) (same).

### 1.  The Proposed Class is Sufficiently Numerous.

Numerosity is satisfied where the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class encompasses approximately 5,568 individuals. (SA, ¶ 35). Therefore, Rule 23's numerosity requirement is easily satisfied because joinder of all 5,568 individuals is impracticable.

*Saliba v. KS Statebank Corp.*, No. CV-20-00503-PHX-JAT, 2021 WL 4775105, at *1 (D. Ariz. Oct. 13, 2021) (finding class of approximately 360 individuals met numerosity requirement).

### 2.  The Settlement Class Satisfies Commonality.

The Settlement Class also satisfies the commonality prong, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, whether Class Members' personal information was compromised in the Data Breach; whether NEG owed a duty to Plaintiff and Class Members to protect their personal information; whether NEG breached its duties; and whether NEG violated the common law and statutory violations alleged. Thus, the commonality requirement is met.

### 3.  Plaintiff's Claims are Typical to those of the Class.

The typicality requirement of Rule 23 is also met because Plaintiff's claims— which are based on Defendant's alleged failure to protect the personal information of Plaintiff and all Class Members—are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiff alleges his personal information was compromised, and that he was therefore impacted by the same allegedly inadequate data security that harmed the rest of the Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Accordingly, typicality is met here.

### 4.  Plaintiff Will Adequately Protect the Interests of the Class.

The last prong under Rule 23(a), the "adequacy" requirement, is satisfied where (1) there are no antagonistic or conflicting interests between the named plaintiff and their

counsel and the absent class members; and (2) the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiff and Class Counsel met these conditions at the preliminary approval stage and continue to meet them now.

Plaintiff is a member of the Class who allegedly experienced the same injuries resulting from the Data Breach and seeks, like the other Class Members, compensation for NEG's alleged data security shortcomings. Plaintiff has no conflicts of interest with other Class Members, is subject to no unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Class. Further, counsel for Plaintiff have years of experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. (*See* ECF No. 32-2). As such, Plaintiff's "interest in this litigation is coextensive with that of the unnamed class members," and he is "perfectly capable of vigorously prosecuting this action through their well-qualified counsel." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009) (citation omitted).

**B.  The Requirements of Rule 23(b)(3) are Met for Purposes of Settlement**.

The Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), because common questions predominate over questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution. *Id*.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As discussed above, common questions predominate over any questions affecting only individual members. Plaintiff's claims depend on whether NEG used reasonable data security to protect his and the Class's personal information. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of question that makes a class-wide settlement worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the

central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted); *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-MD-03098-EMC, 2024 WL 4982986, at *14 (N.D. Cal. Dec. 4, 2024) ("Common questions predominate over individual ones: the class claims, for instance, revolve around the data breach to which all class members were subject as well as 23andMe's security policies and response to the data breach.").

Further, class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are over 5,000 Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. Class-wide resolution is appropriate vehicle to adjudicate these claims. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (predominance met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed").

Accordingly, certification of the Class for purposes of settlement remains appropriate.

## C. The Settlement Should be Approved Pursuant to the Rule 23(e) Factors and the Ninth Circuit's Additional Factors.

### 1. The Strength of Plaintiff's Case.

The first factor the Court must evaluate is the strength of the plaintiff's case. Plaintiff believes his claims are viable and that he has a reasonably good chance of

proving that NEG's data security was inadequate and that, if he establishes that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiff pled in his Complaint. While Plaintiff believes he has strong claims and would be able to prevail, he also recognizes that success is not guaranteed. *See, e.g.*, *Bozek v. Arizona Lab. Force Inc.*, No. CV-24-00210-PHX-SMB, 2025 WL 264174 (D. Ariz. Jan. 22, 2025) (dismissing all but one claim in a recent data breach case); *Johnson v. Yuma Reg'l Med. Ctr.*, No. CV-22-01061-PHX-SMB, 2024 WL 4803881 (D. Ariz. Nov. 15, 2024) (dismissing data breach case in its entirety). It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiff faced with respect to the novel claims brought in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors final approval. *See Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *1 (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) ("While Plaintiff maintains it would have overcome these hurdles, it appears that approving this settlement will be a good result for class members.").

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

While Plaintiff and Class Counsel believe this case has merit, the risk in this case was profound. "The issues in this data breach case are complex and novel. They are a different outside the scope of what a general practitioner is capable of litigating." *Smith v. Kaye-Smith Enterprises, Inc.*, No. 3:22-CV-1499-AR, 2025 WL 72138, at *3 (D. Or. Jan. 10, 2025). "In general, data breach class actions present relatively unchartered

territory, and rarely reach class certification proceedings." *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *7 (N.D. Cal. Jan. 16, 2024) (citation omitted). "[C]oming up with a feasible trial plan would be difficult given that no data breach case for damages has ever proceeded to trial." *Hashemi v. Bosley, Inc.*, 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022).

This case involves a proposed class of over 5,000 individuals (each of whom, NEG would argue, needs to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that has already provided at least some relief to the potentially affected individuals in the form of free credit monitoring. There is no question that Defendant would have raised every available argument to avoid an adverse judgment had litigation continued.

Additionally, the costs of pursuing this litigation would be substantial. Although the Parties began engaging in discovery, discovery had only just begun. Numerous depositions, document production, and other written discovery would be required if the case continued. Extensive and expensive expert discovery would also be necessary. There would also be significant costs and risks associated with class certification, summary judgment, and trial. *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.")."The Settlement removes all of these costs and risks by ensuring class members a recovery that is certain and immediate, eliminating the risk that class members would be left without any recovery at all." *Farrar v. Workhorse Grp., Inc.*, No. CV2102072CJCPVCX, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (internal quotation marks and citation omitted). Accordingly, this factor weighs in favor of final approval.

### 3.  The Risk of Maintaining Class Action Status Through Trial.

The third factor requires the Court to assess the risk of maintaining class action status through trial. Here, if Plaintiff were to continue litigation his claims through trial,

he and the Class would encounter risks in obtaining and maintaining certification of the Class. The Class has not been certified, and Defendant would certainly oppose certification if the case were to proceed. "Historically, data breach cases have experienced minimal success in moving for class certification." *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021). In fact, class certification in data breach cases is uncommon and is often a hurdle that cannot be overcome. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in data breach case); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification); *Adkins v. Facebook, Inc.*, 424 F.Supp.3d 686 (N.D. Cal. 2019) (granting motion to certify injunctive only class, but denying motion to certify damages and issues classes in data breach class action); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed motion for class certification). Thus, the difficulty of obtaining and maintaining class certification through trial supports final approval of the settlement. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement." (citation omitted)).

### 4. The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data breach litigation generally and this litigation specifically, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of two (2) years of Credit Monitoring Services, reimbursement of Out-of-Pocket Costs up to $500.00, reimbursement of Financial Losses up to $4,000.00, reimbursement for Attested Time up to $150.00, or an Alternative Cash Payment of $75.00. (SA, ¶¶ 11, 41–46). Moreover, the Settlement is uncapped, which means that every Settlement Class Member who submits a timely, valid, and Approved Claim will receive compensation for the entirety of their claim. This is a favorable difference from a common fund settlement or a capped claims-made settlement where Settlement Class

Members run the risk of having their claims reduced because there is a limited amount of funds available to pay Settlement Class Members' claims.

Moreover, this Settlement is a strong result for the Class and is on par with or exceeds that of other data privacy settlements. *See, e.g.*, *Bowdle v. King's Seafood Co., LLC*, No. SACV2101784CJCJDEX, 2022 WL 19235264 (C.D. Cal. Oct. 19, 2022) (capped claims-made settlement of $350,000 for 2,875 settlement class members); *Gaston*, 2021 WL 6496734 (settlement of $625,000 for approximately 441,160 settlement class members); *Pygin v. Bombas, LLC*, No. 20-CV-04412-JSW, 2021 WL 6496777 (N.D. Cal. Nov. 29, 2021) (settlement fund of $225,000 for approximately 83,000 Settlement Class Members); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) (settlement of $110,00 for approximately 107,726 class members). These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiff and Class Counsel achieved an excellent resolution for the Settlement Class. Because the Settlement here is similar to, or exceeds, other settlements reached and approved in similar cases, this factor reflects that the settlement is fair, adequate, and reasonable. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS, 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

### 5.  The Extent of Discovery Completed and the Stage of Proceedings

The fifth factor evaluates the extent of discovery completed and the stage of the proceedings. Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular  Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Class Counsel thoroughly evaluated the strengths and weaknesses of the case before reaching a settlement. Class Counsel vigorously and aggressively gathered information regarding the Data Breach—including publicly-available documents concerning announcements of the Data Breach as well as obtaining an expert to search the dark web for information pertaining to the Data Breach. (ECF No. 32-2, ¶ 6). The Parties also informally exchanged non-public information concerning the Data Breach, its scope, and remedial measures

being undertaken by NEG. (*Id.*). In preparation for mediation, Class Counsel reviewed all documents produced by NEG, as well as its responses to Plaintiff's requests for information. (*Id.*). Additionally, Class Counsel thoroughly evaluated the strengths and weaknesses of the case when preparing their response and arguing in opposition to Defendant's Motion to Dismiss and preparing the mediation statement. In sum, the litigation proceeded to the point where "the parties ha[d] sufficient information to make an informed decision about settlement," including a realistic assessment of the strengths and weakness. *See Linney*, 151 F.3d at 1239.

### 6.  The Experience and Views of Counsel

Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. (*See* ECF No. 32-2, ¶ 16, Ex. 1 (resumé of Federman & Sherwood)). Class Counsel's experience in similar types of privacy and data protection cases provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests. Having worked on behalf of the putative Class since the Data Breach was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement achieved. (*Id.* ¶¶ 16, 19). A great deal of weight is to be accorded to the recommendation of experienced counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ("Counsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions." (citation omitted)); *Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *3 (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) (noting class counsel's recommendations are given a presumption of reasonableness). Thus, this factor supports approval as well.

### 7.  Governmental Participants.

There are no governmental participants in this matter.

**8. The Reaction of the Class Members to the Proposed Settlement.**

The eighth factor weighs in favor of final approval because the Settlement has received a positive reaction from the Settlement Class. The deadline to request exclusion from the Settlement or file an objection to the Settlement was January 27, 2025. (Notice Decl., ¶¶ 21–22).  Absolutely ***no*** Settlement Class Members objected to the Settlement and absolutely ***no*** Settlement Class Members requested exclusion. (*Id.*). The lack of any degree of opposition to the Settlement supports final approval. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012) ("There have been no objections from Class Members or potential class members, which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."); *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (finding the reaction of the settlement class supported final approval where there were no objections and only one request for exclusion).

Moreover, the Settlement also received a favorable claims rate. The deadline to submit a claim was February 11, 2025. As of the date of the Settlement Administrator's Declaration, the claims rate was 3.5%. (*Id.* ¶ 20). Due to the speed at which mail is delivered, timely postmarked claims may be received via USPS subsequent to this Motion, causing the claims rate to increase. (*Id.* ¶ 19). Nonetheless, the current claims rate is in line with the claims rate in other data breach settlements and has also exceeded many claims rates that have received final approval. *See Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) ("To begin, the 1.6% claims rate is in line with claims rates in other data breach class action settlements that courts have approved."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval with 0.83% claims rate, stating that the rate was "on par with other consumer cases, and d[id] not otherwise weigh against approval"); *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156,

2024 WL 3903550, at *3 (D. Neb. Aug. 21, 2024) (approving claims rate of approximately 1.25% and noting that it was not unusual for a data breach case); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate).

Therefore, the positive reaction to the Settlement from the Settlement Class Members militates in favor of final approval.

### 9.  Lack of Collusion Among the Parties.

Through the assistance of a neutral mediator and a full-day mediation, the Parties negotiated a substantial, multifaceted Settlement, as described above. (ECF No. 32-2, ¶¶ 4–5). Class Counsel and NEG's counsel are well-versed in  handling data breach class actions and negotiated a settlement that takes into account both the strengths and weaknesses of the case, while providing a timely favorable result for the Settlement Class. Therefore, the Court can be assured that the negotiations that took place were not the product of collusion and were conducted at arm's length. *See In re LifeLock, Inc. Mktg. & Sales Pracs. Litig.*, No. MDL 08-1977-MHM, 2010 WL 11627648, at *4 (D. Ariz. Aug. 31, 2010) ("[T]he Parties' counsel—who have demonstrated their substantial experience in litigating class actions and other complex litigation—support this settlement and have demonstrated that the settlement is the product of extensive arm's-length negotiations. These considerations also weigh in favor of final approval.").

### 10.  The Settlement Treats Settlement Class Members Equitably

In accordance with Rule 23(e)(2)(c)(ii) and Rule 23(e)(2)(D), the proposed distribution process will be equitable and effective. Each Class Member has the opportunity to make the same claims for benefits under the Settlement. The available relief was clearly detailed in the notice documents, which were provided to the Settlement Class Members, laying out the benefits to which they are entitled. (Notice Decl., at

Exhibits B–C). Settlement Class Members were able to submit their claims through a simple online form or by mail during a sufficiently long claims period. (*Id.* ¶ 14). The task of validating these claims will be delegated to the Settlement Administrator, A.B. Data, a neutral party which has significant experience processing these claims in similar cases. Thus, the only difference in treatment among Class Members is that those who incurred and submitted claims for Out-of-Pocket Costs, Financial Losses, and Attested Time will appropriately and equitably receive payments in proportion to the amount of their losses. (SA, ¶¶ 42–44). Thus, the method of distributing the relief is equitable and effective, and the proposed Settlement is fair, adequate, and reasonable under this factor.

## V.    THE NOTICE PROGRAM COMPORTED WITH DUE PROCESS

Lastly, the Court should find that the notice program satisfied due process. To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

As outlined in the Settlement Administrator's declaration, pursuant to the Court's Order granting Preliminary Approval (ECF No. 33), CAFA notice was sent on November 4, 2024. (Notice Decl., ¶ 4). Notice was also disseminated to the Settlement Class. On October 31, 2024, A.B. Data received an electronic data file containing the names and mailing addresses for 4,901 unique Settlement Class Members. (*Id.* ¶ 5). Additionally, the data file contained names with no mailing address for 755 unique Settlement Class Members. (*Id.*). For the Settlement Class Members that had mailing addresses, A.B. Data

updated the addresses with the United States Postal Service's NCOALink® database and mailed the Postcard Notice on December 13, 2024. (*Id.* ¶¶ 6–7). The Settlement Administrator estimates that the Postcard Notices had a reach rate of approximately 98.6%. (*Id.* ¶ 9). Furthermore, prior to the end of the Claims Period, a Reminder Postcard Notice was mailed to the Settlement Class Members who had not yet submitted a claim. (*Id.* ¶ 10).

To address the small number of Settlement Class Members for which NEG did not have a mailing address, NEG published notice of the Settlement on its website for sixty (60) days, pursuant to the Settlement Agreement. (SA, ¶ 55(b)). Although not required by the Settlement Agreement, Federman & Sherwood also posted a press release on the firm's website, providing a link to the Settlement Website.[7] In addition to the above, the Settlement Administrator maintained a Settlement Website, where relevant case deadlines and settlement documents could be viewed, and a toll-free telephone number Settlement Class Members could call to ask questions about the Settlement. (*Id.* ¶¶ 11–15).

In sum, the notice provided to the Settlement Class was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). *See Espinosa v. United Student Aid Funds, Inc*., 553 F.3d 1193, 1202 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'").

## VI.  CONCLUSION

Plaintiff respectfully requests the Court: (1) affirm certification of the Settlement Class; (2) affirm the appointment of Plaintiff as Class Representative; (3) affirm the appointment of Class Counsel; (4) grant final approval of the Settlement; (5) determine notice was provided in accordance with the Court's Order Granting Preliminary Approval and due process; and (6) enter an order granting final approval of the class settlement.

---

[7] https://www.federmanlaw.com/blog/federman-sherwood-announces-preliminary-approval-of-settlement-in-new-enchantment-group-class-action/.

Date: February 27, 2025                         Respectfully Submitted,

                                                /s/: William B. Federman
                                                William B. Federman*
                                                Kennedy M. Brian*
                                                **FEDERMAN & SHERWOOD**
                                                10205 N. Pennsylvania Ave.
                                                Oklahoma City, OK 73120
                                                T: (405) 235-1560
                                                E: wbf@federmanlaw.com
                                                E: kpb@federmanlaw.com

                                                ***Admitted pro hac vice*

                                                ***Settlement Class Counsel for Plaintiff and the Class***

### CERTIFICATE OF SERIVCE

I hereby certify that on February 27, 2025, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

                                                /s/: William B. Federman